GREGG *v.* NORTHERN RAILROAD.

The price of corporate stock at public sales which are sufficiently numerous to attract the attention of investors competent to investigate the question of its value, is ordinarily the best evidence of its market value.

In ascertaining the value of railroad stock, taken by eminent domain, it is error to admit evidence of corporate mismanagement to show that its market value ought to have been greater, or to allow other elements of value to be added to the market price.

Evidence that New Hampshire railroad stock, owned by residents of Massachusetts, is taxable there, is not admissible to show that it has a higher market value in this state.

The notoriety of many facts is so great, that the administration of justice requires the exclusion of evidence based on an assumption of their non-existence.

APPEAL, by the plaintiff, who dissented from a lease of the defendants' railroad to the Boston & Maine Railroad for ninety-nine years from January 1, 1890, from an award of $82,500 as the value of his stock in the defendant corporation. The jury found its value to be $90,225. The lease referred to was at an annual rental equivalent to 5 per cent. on the capital stock for the first seven years and a half, and 6 per cent. thereafter. Subject to exception, the plaintiff introduced evidence tending to show that in October, 1887, the Concord Railroad Corporation offered to take a lease of the road for the same term at an annual rental equivalent to 6 per cent. on the capital stock, and that the offer was rejected.

After the introduction of evidence by the defendants of sales of their stock at the brokers' board in Boston, the plaintiff, subject to exception, put in evidence the statute law of Massachusetts, to show that the defendants' stock is taxable to owners thereof resident in that state.

*William L. Foster* and *Edward B. S. Sanborn*, for the defendants.

*George B. French* and *Bingham & Mitchell*, for the plaintiff.

*Per Curiam.*\* The question of fact to be tried was the market value of Northern Railroad stock on the first day of January, 1890 (*State v. James*, 58 N. H. 67, *Atlantic, etc., Railroad v. State*, 60 N. H. 133, 140, *Low v. Railroad*, 63 N. H. 557, 562), the day when Gregg's stock was taken by an exercise of the right of eminent domain. This power of purchase was exercised for the

---

\* See foot-note on page 80.

purpose of obviating Gregg's objection to a lease of the road to
the Boston & Maine Railroad for ninety-nine years from that date.
P. S., *c.* 156, *ss.* 28–37. It is conceded that the market value of
the shares on that day depended largely upon the previous man-
agement of the company's affairs, including the contract for the
lease. But it is claimed that evidence tending merely to show
that with better management the shares would have been worth
more on that day than they were then worth was competent.
The question, however, was, not what they would or might have
been worth at that time if the management had been better or
worse, but what they were worth in consequence of the manner
in which the affairs of the corporation had been managed, whether
good or bad. A very important part of that management was
the execution of the lease to the Boston & Maine for ninety-nine
years from January 1, 1890. If Gregg had continued to hold his
stock without objecting to the lease, he would have held it sub-
ject to the lease, and in his hands its value would have been
affected by the lease, as it now *is* and *will* continue to be affected
in other hands. January 1, 1890, the effect of the lease on its
value was inevitable. In this state of things, evidence was re-
ceived which tended to show that on that day the stock ought to
have been worth more than it was worth, — that by bad manage-
ment the road had been leased at a lower rental than the Concord
offered more than three years before. This was an alteration of
the question to be tried. If property were taxed not at its market
value (*i. e.*, the price obtainable at a fair sale), but at what it
would have been worth if it had received more skilful manage-
ment than its owners had bestowed upon it, the owners would be
subject to the form of injustice which the purchasers suffered in
this case. The jury were asked to compel the purchasers to pay
what the stock would have been worth if the offer of the Concord
company had been accepted, and to give the vendor more than he
could have obtained by a voluntary sale in a fair market. The
lease to the Boston & Maine was as much an element and as con-
trolling an element of the market value as if the sale of Gregg's
shares had been voluntary. The involuntary character of his sale
is immaterial.

The general character of the evidence stated in the case, and
the argument in support of its competency, show that Gregg's
claim was that the market price, as shown by sales in Boston,
was less than the market value, and that the Concord's offer
was introduced to support this claim. Undoubtedly the ques-
tion tried might have been such as to make the Concord's
offer competent. But its competency depends not on a question
that might have been tried and a use that might have been made
of it, but on the question that was tried and the use that was
made of it. It was evidently used to show that Gregg should
have a higher price than he could have obtained if the sale had

been voluntary for the highest price obtainable in a fair market.

Evidence of the tax law of Massachusetts is open to a similar objection. The argument for the competency of this evidence is, that Massachusetts taxation of New Hampshire railroad stock owned by residents of Massachusetts placed them in a less favorable position than that occupied by owners resident in New Hampshire, where property is not liable to double taxation. This is an unavoidable element of the market value, which is necessarily the same in both states. The argument for the admission of this evidence is based on the assumption that the market price in Massachusetts is less than in New Hampshire, and this assumption is one of the unfair phases of the trial. The law is not always able to do justice; but it does not perpetrate flagrant injustice upon an assumption of that kind. Whether Northern Railroad stock has a Massachusetts market value and a different New Hampshire market value is a question of fact and not of law. But there are many facts so notorious and indisputable that evidence based on an assumption contrary to them, and requiring the other party to prove them, is properly excluded as calculated merely to waste time, increase the public and private expense of the trial, and throw the administration of justice into confusion. From the necessity of the case, the law distinguishes between questions of fact which can fairly be contested for a purpose of justice, and questions which cannot be fairly contested for such a purpose. To deny this distinction would be to refuse to exercise common sense in a work in which that kind of sense is as necessary as in any other, and to sacrifice legal rights to a mode of reasoning too refined and technical for the practical purpose of the law. The objection to the admission of the Massachusetts law of taxation, and of other evidence in this case, is not met by the power of setting aside the verdict if contrary to the evidence. *Cole* v. *Boardman*, 63 N. H. 580, 583. The value of the stock fixed by the verdict may not have been so excessive as to justify a finding that the verdict is contrary to the evidence, while there may have been error in the admission of evidence that necessarily rendered the trial unfair. When such evidence is admitted, as it apparently was in this case, on an erroneous assumption that it cannot be legally excluded, the law requires a correction of the error.

The tax law of Massachusetts and other evidence was admitted, apparently because it was assumed by the court that as matter of law the plaintiff was entitled to its admission, and that if it were rejected, and the verdict did not satisfy the plaintiff, it would be set aside. On that or some other untenable ground, evidence was admitted that was useless for any legal purpose. It tended, and tended only, to mislead the jury and produce an unjust verdict. Whatever the ground on which it was admitted, the unfair-

ness it imparted to the trial, and the wrong it strongly tended to accomplish, are so evident that there should be a new trial.

"An auction sale of stocks . . . at the public exchange in a large commercial city affords the truest standard of the prices at which they are estimated in the market." *Kent* v. *Whitney*, 9 Allen 62, 63. In general, the price paid at such sales and at the brokers' board in Boston for Northern Railroad stock and various other New Hampshire stocks, there sold often enough to attract the attention of investors competent to investigate the question of value, may well be taken as the market value. The market value of property that has no regular market price because not often sold in a public market of that kind, may require evidence of all the elements that would be considered by competent bidders in such a market. In this case evidence of those elements was added to evidence of a regular market price in a manner and to an extent which we cannot suppose would have been allowed if an erroneous view of the law had not been taken. Much of this objectionable evidence would hardly have been admitted, if it had been understood that it could have been rejected as confusing and misleading.

In *Low* v. *Railroad*, 63 N. H. 557, a case of eminent domain, the verdict was set aside for error in the instructions on the question of value. The error was not in a wrong statement of the law, but in the manner of presenting a view of the evidence. It is there said (*p.* 562),—" The instructions given on this point in this case were misleading. Details of circumstantial evidence were so enlarged upon and emphasized as to tend strongly to withdraw attention from the question of market value, and to present an exaggerated and erroneous view of the damages. By persons familiar with the law of the subject, the charge could, perhaps, be construed to authorize no departure from the measure prescribed by the fair market value of the land. But others would be likely to understand from the instructions that the damages could be expanded beyond that value by adding to its amount some of the elements comprised in it."

In the present case, the error was in admitting evidence which might be useful under some circumstances, but which in this case was useless for any other purpose than to induce the jury to expand the market value by adding to it some of the elements comprised in it.

Evidence was admissible to show that the regular market price was lower than the market value,—that by management important elements of value were concealed from bidders in order to depress the price. But when property has such a regular market price as Northern Railroad stock, and when the improbability is so great that material elements of value were concealed from the class of expert investors who make a business of ascertaining the value of such stock as the Northern, it is a duty to see that injus-

tice is not done by adding to the market price elements of value naturally included in it. And this duty is to be discharged not only by instructions, but also by excluding evidence that evidently can have no other effect than to render the trial unfair. Evidence is constantly excluded, not because as a matter of law it can have no bearing on the issue, but because as a matter of fact it is under the circumstances of the case too remote in point of time or place, or too insignificant in other respects, to have any proper weight, or to have any other than a confusing and misleading effect. *State* v. *Hastings*, 53 N. H. 452, 461; *Tilton* v. *Bible Society*, 60 N. H. 377, 384; *Amoskeag Mfg. Co.* v. *Worcester*, 60 N. H. 522, 525; *Alexander* v. *United States*, 138 U. S. 353, 356. Some of the evidence to which objection was taken should have been excluded on this ground.

*Verdict set aside.*

CARPENTER and CHASE, JJ., did not sit: the others concurred.