Grafton, }
May 2, 1905. }

## GIBBS *v.* MANCHESTER.

A police officer who has been wrongfully dismissed by a board of police commissioners established for a city under legislative authority cannot maintain an action against the municipality for breach of a contract of employment.

The police commissioners of Manchester are not agents of the city, but public, governmental officers, over whom the municipality has no control and for whose conduct it is not responsible.

Where a city ordinance provides, in effect, that policemen shall be paid for services actually rendered, a member of the force who has been wrongfully dismissed, and who seeks to recover his salary during the period of dismissal, is required to show that during that period he was ready and willing to perform the duties of his office, and that he has been reinstated as a member of the force.

If a police officer neglects to take any action for reinstatement after his wrongful dismissal from the force, makes no attempt to perform police duty, demands no pay for his services, and establishes a permanent residence elsewhere, the only reasonable conclusion to be drawn from his conduct is that he has abandoned the office and waived all claim for salary.

ASSUMPSIT, for breach of contract. Writ dated April 22, 1901. Trial by jury and verdict for the plaintiff. Transferred from the November term, 1904, of the superior court by *Pike,* J.

In 1894, the plaintiff was appointed a police officer for the city of Manchester by the police commissioners, under the provisions of chapter 202, Laws 1893. January 28, 1896, he was removed

from office by the commissioners, without charges being preferred against him and without a hearing, by an order contained in and made a part of an order entered in a proceeding against another officer. When he reported for duty on the evening of January 28, he was notified of his removal and went to his home. On the following day, or about that time, he went to the police station and delivered up his police badge, diary, book of rules, and other property of the city in his possession. This was done at the request of the chief of police and without protest. Later he made a new application for appointment upon the police force, and although he saw the commissioners at different times, he never asked them for a formal hearing upon the question of his discharge, or suggested to them that he was entitled to one. He never reported for duty after the night he was notified of his removal, nor did he claim to be a member of the force or attempt to do work as a police officer. A few days after his removal he sought a position on the police force of Suncook, but was unsuccessful. For a short time he worked in the needle works in Manchester. From July 1, he worked outside the state for a period of three months. He then went to Franklin, New Hampshire, where he was engaged in different employments until January 1, 1899, when he moved upon a farm in Bristol, where he now resides. From the time of his removal to the bringing of this action he never said anything to any one representing the city that he intended to make any claim against it. Soon after his removal another person was appointed to succeed him upon the police force. Other facts appear in the opinion.

*Ira A. Chase, Batchellor & Mitchell*, and *Branch & Branch*, for the plaintiff.

*George A. Wagner* and *Burnham, Brown, Jones & Warren*, for the defendants.

BINGHAM, J. The trial in the superior court proceeded upon the ground that the plaintiff's appointment and qualification as a police officer constituted a contract between him and the city of Manchester, to continue "during good behavior and while competent to discharge the duties of the office," or until he was removed by the police commissioners "for good and sufficient cause and after a due hearing." The form of action was assumpsit to recover damages for a breach of the supposed contract, and the breach relied upon was the dismissal of the plaintiff by the commissioners from the police force, without a presentation of charges, notice, and a hearing. The jury returned a verdict for the plain-

tiff, and the superior court, subject to exception, set it aside and directed a verdict for the city, upon the ground that, as a matter of law, it was not liable for the unauthorized and wrongful acts of the police commissioners in the alleged removal of the plaintiff from the police force.

The plaintiff's counsel now concede, and such is undoubtedly the law (*Marden* v. *Portsmouth*, 59 N. H. 18; *Stone* v. *Towne*, 67 N. H. 113; *Saunders* v. *Nashua*, 69 N. H. 492; *White* v. *Levant*, 78 Me. 568; *Sikes* v. *Hatfield*, 13 Gray 347; *Farnsworth* v. *Melrose*, 122 Mass. 268; *Farrell* v. *Bridgeport*, 45 Conn. 191; *Haswell* v. *New York*, 81 N. Y. 255; *Fitzsimmons* v. *Brooklyn*, 102 N. Y. 536; *Fiske* v. *Police Jury*, 116 U. S. 131; 1 Dill. Mun. Corp., ss. 229, 230), that the action for breach of contract cannot be maintained. The reason is that there was no express contract between the plaintiff and the city, and none could be implied except for services actually rendered. They contend, however, that the plaintiff in the discharge of his duties as policeman was a public officer; that the action of the commissioners in removing him from office was unlawful and void; that his removal being unlawful, he continued to be an officer *de jure* and entitled to all the emoluments of the office; that all the facts showing what salary was attached to the office and essential to its recovery appear in the case; and that he should have judgment for his salary at the rate of $2.25 a day from the date of his discharge (January 28, 1896) to the commencement of this action (April 22, 1901), the same as he would be entitled had he actually rendered service during this period and his suit had been originally brought to recover the salary and not for damages for a breach of contract.

Under the act of 1893 (c. 202), the commissioners are not authorized to remove police officers at will, but for good and sufficient cause and after due hearing. The act does not state what causes shall be regarded as good and sufficient to justify a removal, but it is evident that it contemplates some substantial cause, such as corruption or inefficiency in office, infraction of the rules governing the police force, the commission of an infamous crime, or the conviction of a misdemeanor and sentence to imprisonment for a term. *Andrews* v. *King*, 77 Me. 224. The removal being for cause and after due hearing, the proceedings authorized by the statute are necessarily of a judicial character; and as the mode of procedure is not specified in the act, the substantial principles of the common law, recognized and enforced in proceedings affecting private rights, are to be observed. *Andrews* v. *King*, *supra*; *Murdock*, *Ap't*, 7 Pick. 303; *Murdock* v. *Academy*, 12 Pick. 244; 1 Dill. Mun. Corp., s. 253.

According to the principles of the common law, the accused

would be entitled to have the charges intended to be brought against him stated specifically and with substantial certainty, though not necessarily with the technical nicety required in indictments. *Andrews* v. *King*, and cases cited *supra*. He would also be entitled to reasonable notice of the charges thus stated and of the time and place of hearing, and should be allowed to cross-examine the witnesses produced against him and to offer testimony in his own behalf, within the rules of evidence. After the hearing and before sentence, the commissioners should decide upon the truth or falsity of the charges as matters of fact, for upon such decision their sentence is based; and to comply with the statute (Laws 1893, *c*. 202, *s*. 4), the charge found to be true, and upon which the order of removal is based, should be stated in the order. Such seems to have been the course generally pursued by the commissioners in proceedings for the removal of officers; but in this instance they summarily dismissed the plaintiff without specific charges being preferred against him, and without notice and an opportunity to be heard upon charges.

In some cases it has been held, where the governing board have acted summarily, the powers conferred upon them being judicial, that their course of conduct could not be supported as a judicial proceeding and could be inquired into in a suit brought to recover the salary of the officer thus summarily dismissed (*Murdock* v. *Academy*, 12 Pick. 244); while in others, if the board making the order of removal had jurisdiction of the subject-matter, the view has been entertained that the removal proceedings could not be inquired into in a suit for the salary, but must first be set aside in a direct proceeding instituted for that purpose. *Shannon* v. *Portsmouth*, 54 N. H. 183; *Grand Trunk Ry.* v. *Berlin*, 68 N. H. 168; *Ham* v. *Board of Police*, 142 Mass. 90. But it does not seem necessary to decide this question; for if we assume that it was not within the legal powers of the commissioners to summarily remove the plaintiff, we are of the opinion that he cannot in this action recover his salary from the city.

In section 5, chapter 202, Laws 1893, it is provided that " the compensation of . . . all members of the police force shall be fixed from time to time by the city councils." Whether the city councils have acted under this statute and fixed the salary of police officers does not appear in the case. If such an ordinance has not been enacted, or if one has been and we are not at liberty to take judicial notice of it because it must be proved as a fact (*State* v. *Soragan*, 40 Vt. 450,—Ann. ed. 455, note), then it follows, so far as this action is concerned, that the plaintiff cannot recover, for there would be no salary attached to the office as a matter of fact. But as such an ordinance seems to have been

enacted, and it may be beneficial to have the case considered as though it had been proved, we proceed to do so.

In the city ordinances of Manchester it is provided that " the pay of watchmen and regular police officers of the city shall be at the rate of two dollars and twenty-five cents per day while actually employed, and payable monthly " (Manchester Ord., *ed.* 1892, *c.* 6, *s.* 15), and the plaintiff testified that he was to receive, as an officer, two dollars and twenty-five cents per day when he worked. The ordinance, when considered in the light of the plaintiff's testimony, would seem to contemplate the actual rendition of services to entitle an officer to his salary. But it may be said that, as the plaintiff was ready and willing to perform the duties of his office and was wrongfully prevented from performing them by the commissioners, the ordinance should be liberally construed, and that he should be considered as favorably as though he had actually rendered the services. This argument would be of weight if the commissioners were the agents of the city; for to hold otherwise would be to allow the city to avail itself of its own wrong. The commissioners, however, are not the agents of the city. They are public governmental officers over whom the city has no control, and for whose conduct it is not responsible. A reasonable compliance with the ordinance therefore required the plaintiff to go further, and show not only that he was ready and willing to perform the duties of his office during the period of removal, but that he had seasonably taken steps to bring about his reinstatement and had been reinstated. This would be giving the ordinance a construction as favorable to the plaintiff as its terms warrant. But instead of seasonably applying for reinstatement, either by a formal demand upon the commissioners or by appropriate legal proceedings, the plaintiff waited some five years and three months without taking any steps looking to his reinstatement and without even making a demand upon the city for his salary. *Phillips* v. *Boston*, 150 Mass. 491; *Streeter* v. *Worcester*, 177 Mass. 29; *Glori* v. *Commissioners*, 60 Atl. Rep. 47.

It may further be said that if the plaintiff was wrongfully removed it was within his power to be reinstated by proper proceedings; and as it appears from the evidence that on or about the day following his dismissal he surrendered his badge of office and other property of the city upon demand and without protest, that he failed to take any action for his reinstatement, that he made no attempt to perform any act of police duty, that he did not assert that he was of right a member of the police force or claim the right to be put on duty as such by the commissioners, and that about July 1, 1896, he permanently removed from the city and at no time has demanded payment of his salary from it,

the only reasonable conclusion to be drawn is that he abandoned his office and waived all claim against the city for his salary. *Phillips* v. *Boston, supra,* 493.

Again, the only issues tried in the superior court were whether the plaintiff had complied with the terms of the supposed contract, and whether the assumed agents in removing the plaintiff from office did so summarily, without preferring charges and without giving him a due hearing. If in a suit for the salary any issue or issues could be raised which were not determined in the suit for breach of contract, the verdict directed for the defendants should not be set aside and a verdict ordered for the plaintiff for his salary. It is clear that such issues might be raised in a suit for the salary. In some jurisdictions it is held that a *de jure* officer who has been restored to his office cannot recover his salary from the city, if during his removal another person has been appointed to his office, who, acting under color of title, has performed the duties of the office and to whom the city, acting in good faith, has paid the salary. *Dolliver* v. *Parks,* 136 Mass. 499; *Phelon* v. *Granville,* 140 Mass. 386; *Coughlin* v. *McElroy,* 74 Conn. 397; *McVeany* v. *Mayor,* 80 N. Y. 185; *Nichols* v. *MacLean,* 101 N. Y. 526; *Kessel* v. *Zeiser,* 102 N. Y. 114; *State* v. *Carr,* 129 Ind. 44; *Warden* v. *County,* 87 Wis. 181; *Dorsey* v. *Smyth,* 28 Cal. 21; *Selby* v. *Portland,* 14 Or. 243. In others it is held that the *de jure* officer cannot recover of the city where it has paid the salary to the *de facto* officer, without notice from the *de jure* officer of his claim to the office and his right to the salary. *Andrews* v. *Portland,* 79 Me. 484. In any view of the case, the order must be,

*Exception overruled.*

All concurred.