Merrimack,
March 5, 1940. } No. 3112.

EVERETT G. PERKINS *v.* NEW HAMPSHIRE POWER CO., *& a.*

*Laurence I. Duncan, Richard F. Upton* and *Robert W. Upton* (*Mr. Duncan* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones* (*Mr. Franklin Hollis* orally), for the defendants.

ALLEN, C. J. The legislature has authorized the transfer of the "franchise, works or system" of a public utility to another one, provided the Public Service Commission "shall find that it will be for the public good and shall make an order assenting thereto." A dissenting stockholder of the transferor is to have his rights "regulated, protected and determined" by the statutes relating to the rights of a dissenting stockholder in a railroad corporation which leases its road to another corporation or unites with it to form a

new one. P. L., *c.* 240, *ss.* 28, 30. A stockholder in a railroad thus dissenting may by petition to the Superior Court seek a determination of the value of his "stock, interest or property right taken." P. L., *c.* 246, *s.* 25. Provision for hearing, orders and payment is also made. *Ib.*, *ss.* 27, 30, 31.

In 1883 an act (Laws 1883, *c.* 100) was passed, by which authority was given for a lease by one railroad corporation to another or for their union into a new corporation, if the lease or union was found to be for the public good (*s.* 17), with provision for the value of the interest of any stockholder who did not consent to exchange his stock for stock in the new corporation to be appraised (*s.* 19). On payment or tender of the amount of the appraisal the interest of the stockholder was to cease (*s.* 21).

The 1883 act contained no provision for compensation to stockholders dissenting to a lease of their railroad, and in *Dow* v. *Railroad*, 67 N. H. 1, decided in 1886, it was held that such stockholders were entitled to have the lease declared void, as being an unconstitutional interference with their property rights. "Eminent domain not being exercised over the plaintiffs' shares, it is necessary to observe the difference between that private authority over each share of the private property which its owner alone can give the majority, and that public agency which the public alone can give them." *Ib.*, 5.

The decision led to an amendment of the 1883 act in 1889. The amendment (Laws 1889, *c.* 5) broadened the 1883 act by giving stockholders dissenting to a lease the same rights as in a dissent to a union, and it enacted more specific procedure for enforcing a dissenter's right to have the value of his "stock, interest, or property right taken" determined, and paid or tendered (*s.* 1). It has not been materially changed in this respect by the later statutory revisions. (P. S., *c.* 156, *s.* 32; P. L., *c.* 246, *s.* 25).

The transfer of the Power Company's property to the Public Service Company having been found by the Public Service Commission to be for the public good and having been "duly authorized and approved" by the Commission, the authority given was an exercise of the power of eminent domain in the public interest, in respect to the Power Company's dissenting stockholders. The application for assent to the transfer necessarily included a request that the State's power of condemnation be exercised in respect to owners of interests who did not accept the terms offered them. The transfer could be perfected only by the taking of such interests. The exercise of the power was properly invoked, in view of the

Public Service Company's status as a corporation serving a public interest. *Rockingham &c. Co.* v. *Hobbs*, 72 N. H. 531. So far as the plaintiff's rights arising from ownership of his stock were taken from him without his consent, he was entitled to compensation in money equal to the value of his rights. The statute provides therefor, and for the manner of securing and obtaining it. As the prescribed method for the regulation, protection and determination (P. L., *c.* 240, *s.* 30) of his rights, it is designed by the statute to exclude other remedy and procedure for redress.

Under the view that a corporation, as an evolution from a partnership, is " 'an association formed by the agreement of its shareholders,' and its existence 'as an entity, independently of its members, is a fiction' " (*Dow* v. *Railroad, supra,* 3), the stockholders of the Public Service Company in association sought to acquire property belonging in ultimate ownership to the Power Company's stockholders. Some were willing and some unwilling to sell their ownership interests. Through eminent domain the interests of those unwilling might be acquired. Those willing to sell owed no fiduciary duty to the others not to vote for the transfer. If they thought the public good would be promoted by a transfer, they had no obligation to the stockholders who disagreed with them not to have that issue determined. Although the transfer was to be to themselves, their trusteeship did not require them to remain in association with the dissenters when it was duly found that the transfer was for the public good. If the public good justified the transfer, it was in the light of the fact that the transfer was to themselves. They were therefore not barred from seeking the transfer through associated or corporate action. The private right must yield to the public interest. Fairly, the statute permitting corporate consolidation, by its provision for the rights of dissenting stockholders, implies that the stockholders voting for consolidation have no relationship as trustees towards the dissenters in casting their vote. Whatever the self-interest of the required majority, the statute defines the rights of stockholders who dissent.

When two railroad corporations are united into a new one, it is not illegal if the new one is to be controlled and owned by the majority shareholders of the two which consolidate while the minority are opposed. This is the statutory contemplation, the provisions for protecting the interests of the minority making it clear that the majority are absolved from a fiduciary relation towards the minority in respect to the issue of consolidation. The minority are secured

for the value of their interests, whether or not the majority act in self-interest. To hold that the majority may be barred by the dissent of the minority from seeking the ascertainment of the public good and claiming it, would give the individual an undue advantage at the expense of the public.

In some limited analogy, when property is sold at auction in partition proceedings, any owner of any interest may bid to become a purchaser. He owes no duty to the other owners to abstain. All owners are free to act solely in their own interest. So here the plaintiff if he saw fit might invest the proceeds of his stock in stock of the purchaser. If the analogy is only partial, it applies as far as the circumstances permit.

The plaintiff's right to adequate security for payment of the award to which he may be found entitled (*Goodrich Falls &c. Co.* v. *Howard,* 86 N. H. 512, 524) is not disregarded by the statute. While the transfer of the Power Company's property has been effected as between it and its transferee, the perfection of change of title will not be attained until the amounts due its dissenting stockholders are finally determined and payment or tender and deposit thereof made. P. L., *c.* 246, *s.* 33. The Public Service Commission's assent to the transfer was valid. It was a term of the assent necessarily implied that the transfer was subject to the condemnation statute. The plaintiff may claim that the transfer is ineffective to impair his security for payment, but not that the transfer is invalid.

It follows that the plaintiff has mistaken his remedy. If he is dissatisfied to take the amount offered for his stock, his relief is by proceeding under the statutory method marked out. (P. L., *c.* 246, *s.* 25 *et seq.*). By amendment this proceeding may invoke it. The issue of fact to be tried will be the market or best ascertainable value of his stock on the date of the transfer of the power company's property August 8, 1936. *Gregg* v. *Railroad,* 67 N. H. 452.

This opinion is not to be construed to imply that the plaintiff's claims would be upheld if the factor of eminent domain did not appear.

*Case discharged.*

All concurred.

---

On Rehearing. After the foregoing opinion was filed the defendants' motion for rehearing was granted on the issue of the appli-

cation of the utility regulation statute. The decision rested on a ground not presented in argument and the motion was granted to enable the parties to be heard respecting it.

*Demond, Sulloway, Piper & Jones* (*Mr. Joseph A. Millimet* orally), for the motion.

*Laurence I. Duncan, Richard F. Upton* and *Robert W. Upton* (*Mr. Duncan* orally), opposed.

ALLEN, C. J. The defendants say that the plaintiff's share or interest as a stockholder of the Power Company was not taken from him, but that the company's liability to him was discharged by tender of the amount payable according to the contractual terms between them, as though he were in the position of a creditor. But the contractual terms were not the full measure of his rights. He had in addition whatever rights were created by statute, and his statutory rights controlled those strictly contractual. His agreement to take the face value of his stock and accrued dividends in a sale of the Company's property was not unqualified. It was also agreed, by force of the statute, that he might demand value, according to its worth. The statute provides that this value may be received on a transfer of a utility's system. In effect it entitles a stockholder to the value of his stock if he does not accept his contractual rights. The plaintiff's stock was acquired with that benefit attached to it. It is not to be inferred that he agreed to limit his rights to those of a non-statutory character when the statutory ones bestowed additional benefit.

The transfer of the power company's property was a transaction of which the various steps taken to accomplish it were all parts going to form the whole. The undertaking to discharge the plaintiff's rights as a contractual matter was inseparably connected with the public approval necessary to be obtained to give validity to the transaction. The statutory rights given as incidental to a public approval for the transfer thus became available, and the plaintiff was not bound by the provisions of the contract as his sole remedy.

A dissenting stockholder may enjoy the benefit of the utility regulation statute whether or not the stockholders are to receive cash for their stock on the sale of a utility's property. The statute is intended to cover all cases of dissent. Designed to prevent any interference with a sale of a utility in the public interest, it facilitates

the sale by the removal of stockholders' objections and the substitution of special rights of compensation. The business corporation statute (P. L., c. 225, ss. 54, 58) gives appraisal rights only to stockholders voting against a sale. Whatever may be the rights of other objecting stockholders at common law or in equity when the corporation is not a utility, the utility statute, by the provision for special remedy, avoids any bar to a sale found to be in the public interest. It would be anomalous if a utility stockholder, unable to question the fairness of a sale and having no rights under the business corporation law because he did not or could not vote, were without redress. To secure the public interest that the transfer be made, the utility statute creates a special and exclusive remedy for all objecting stockholders unwilling to accept their contract rights, and the remedy is enforceable regardless of the unfairness of the transfer as to them and of differences in the transfer as one for a sum of money or as one for an exchange of stock by the stockholders.

What the private rights and obligations are as between a corporation and its stockholders, is not a matter of concern in passing on the public interest in a proposed sale. But to assure that they shall not be a cause of disturbance in establishing the public interest to have a sale concluded, the legislature has provided a specific and special method of treatment and remedy for their enforcement.

The business corporation statute, although enacted after the utility regulation statute, did not modify it. All utilities, however formed and organized, are subject to it. This follows under a principle of rational statutory construction. "The question, where two statutes are in conflict, which is to govern, is one of legislative intention, and is determined . . . by the natural weight of all the competent evidence, and not by an arbitrary formula." *Niagara Bridge Works* v. *Jose*, 59 N. H. 81, 84. "When both the acts are affirmative, and the substance such that both may stand together, the latter does not repeal the former, but they shall both have a concurrent operation." *State* v. *Wilson*, 43 N. H. 415, 419. Moreover, the statutory revision (Public Laws) in 1926 reënacted both the business corporation and the utility regulation statutes as of the same date, thus making it conclusive that the former is to be considered with reference to the latter without repealing or modifying it.

The utility regulation statute makes no requirement that dissent may be registered only by vote. In this respect it contrasts with the business corporation statute, and is in parallel with the railroad corporation statute (P. L., c. 246, s. 25) which requires, among other

things, a statement of stockholders who have not expressed their "assent or dissent". Thus definitely railroad stockholders are not required to vote in order to have standing as dissenters, and, in strong implication, the utility statute contemplates that all who in any manner express objection are dissenters. It is not thought that the statute should be construed with a meaning of narrowed scope or with technical definition of its terms. This view is in recognition of the purpose of the statute that no sale in the public interest shall be jeopardized by objections of stockholders, and of its purpose to secure freedom from attack on a sale by providing a special remedy for all objecting stockholders in comprehensive inclusion. Any limitation in this respect or in the character of the sale as one for money or otherwise or as fair or unfair would tend to defeat the public interest that the sale be effected.

*Former result affirmed.*

All concurred.