Grafton
No. 7921

PAUL H. INGERSOLL

v.

BURTON W. WILLIAMS & a.

March 10, 1978

*Joseph F. Wundrok,* of Bristol, and *John J. McCormack,* of Ashland (*Mr. McCormack* orally), for the plaintiff.

*Upton, Sanders & Smith,* of Concord (*Richard F. Upton* orally), for the defendants.

DOUGLAS, J.   The plaintiff, police chief of Bristol, seeks equitable relief to overturn his dismissal without a hearing by the defendants, the selectmen of Bristol. The town of Bristol appoints, rather than elects, its chiefs. Plaintiff's employment was terminated on September 26, 1977, "for cause, namely, poor, inefficient and unprofessional management . . . and conduct detrimental to the good order, reputation and morale of the Department." The plaintiff claims that RSA 41:48 prevents his discharge without a full hearing as governed by RSA ch. 43. Admittedly, those procedures were not followed. Alternatively, he argues that even if RSA 105:2-a (Supp. 1975) supersedes RSA 41:48—the contention of the defendants—then RSA 105:2-a (Supp. 1975) itself requires a full hearing before the selectmen prior to dismissal. Upon recommendation of the Master (*Michael L. Slive,* Esq.), these questions and a question concerning the burden of proof were transferred without ruling by *Johnson,* J.

RSA 105:2-a (Supp. 1975) concerns only chiefs of police who are appointed rather than elected. It provides that an appointed chief may be dismissed only for cause "after he has been presented with a written specification of the reasons." After his dismissal, he is "entitled to a hearing, on the merits and reasonableness of the action, in superior court . . . ." Thus the plain language of the statute seems to preclude a pretermination hearing before the selectmen. The plaintiff, however, points to the words "for cause" and our decision in *Gibbs v. Manchester,* 73 N.H. 265, 61 A. 128 (1905). His argument is that when a statute requires cause for dismissal and does not prescribe the mode of procedure, *Gibbs* requires a full panoply of procedural common-law rights before a discharge can be effectuated.

Such an interpretation of *Gibbs* is far too broad. The statute in *Gibbs* restricted removal to "good and sufficient cause and

after a due hearing." Thus the statute itself required a hearing but did not prescribe the form of that hearing. The court reasoned that because a hearing was required and the procedures not specified, the principles of the common law applied. The court presumed that the proceedings authorized by statute were essentially judicial. 73 N.H. at 267, 61 A. at 129. In contrast, the procedure specified in RSA 105:2-a (Supp. 1975) does not require a pretermination hearing; it prescribes termination after presentation of a written specification of reasons. A hearing is granted, but in superior court after the dismissal. *Cf.* RSA 41:48 (hearing for policemen before the selectmen prior to dismissal). The legislature having prescribed the procedure, our interpretation of the statute in *Gibbs* has no relevance.

Moreover the logic of the plaintiff's argument that dismissal for cause necessarily includes a full common-law pretermination hearing is unavailing. The words "for cause" do not relate to the procedures mandated for a removal. Rather they restrict the scope of the superior authority's power to terminate an employee. That authority can no longer dismiss a subordinate for personal dislike, political disagreement, or reasons of that nature. The substance of the reason for dismissal must turn on "some substantial cause, such as corruption or inefficiency in office, infraction of the rules governing the police force, the commission of an infamous crime, or the conviction of a misdemeanor and sentence to imprisonment for a term." *Gibbs v. Manchester,* 73 N.H. at 267, 67 A. at 129. Without deciding whether the words "for cause" gives an employee anything more than a subjective expectancy of continued employment, *see Desmarais v. Personnel Comm'n,* 117 N.H. 582, 378 A.2d 1361 (1977); *McIntosh v. Personnel Comm'n,* 117 N.H. 334, 374 A.2d 436 (1977); *cf. Board of Regents v. Roth,* 408 U.S. 564 (1972), we note that a post-termination full judicial hearing is more than adequate to secure the employee's interest. *See Arnett v. Kennedy,* 416 U.S. 134 (1974); *cf. Bishop v. Wood,* 426 U.S. 341 (1976).

Because RSA 105:2-a (Supp. 1975) does not require a pretermination hearing before a town's selectmen, there is an unavoidable conflict between that provision and RSA 41:48. The latter statute deals with all full-time police officers. All such officers, whether appointed or elected, hold their positions during good behavior "unless sooner removed for cause by the selectmen, after notice and hearing . . . ." There is nothing in the statute or our

decisions to suggest that chiefs of police were excluded from its coverage. *Cf. Gibbs v. Manchester,* 73 N.H. 265, 61 A. 128 (1905). Hence by its terms, RSA 41:48 affords the plaintiff a pretermination hearing before the Bristol selectmen.

■■ Although repeal by implication is not favored in this State, *State v. Miller,* 115 N.H. 662, 348 A.2d 345 (1975); *Opinion of the Justices;* 107 N.H. 325, 221 A.2d 255 (1966), when the natural weight of all the competent evidence demonstrates that the purpose of the latter statute was to supersede the former, the latter statute will control although it does not expressly repeal the former law, *Opinion of the Justices,* 66 N.H. 629, 33 A. 1076 (1891); *see Perkins v. New Hampshire Power Co.,* 90 N.H. 538, 13 A.2d 475 (1940). Short of express repeal, we fail to see how the legislature could have expressed more clearly that it wanted to remove appointed chiefs of police from the ambit of RSA 41:48. The later statute deals with only one type of police chief—one who is appointed. It is clear then that the legislature's mind was focused on one subclass of all police officers. The statutory scheme, as it stands now, makes a clear differentiation between officers who are responsible directly to the selectmen (appointed police chiefs); appointed officers, who are responsible to their chiefs; and elected chiefs, who are responsible to the people of the town.

The plaintiff, however, attempts to use legislative history to preclude that conclusion. Our independent review suggests that legislative record does not support the plaintiff's argument. Essentially the argument consists of three parts: that the legislature knew of RSA 41:48 at the time it enacted RSA 105:2-a (Supp. 1975) and would not have abrogated the former provision without saying so explicitly; that there is no reason to afford police chiefs lesser rights than other police officers; and that a supporter of the bill characterized it as an "appeal procedure." However, as we have noted, the statutory language is quite clear. Furthermore, those persons who spoke in favor of the bill at a public hearing expressed the belief that the power to review the decision to fire a chief should be removed from the selectmen. The legislative record on this point is sparse, but at the least, it does not refute our construction of RSA 105:2-a (Supp. 1975).

We also find that there is ample reason to treat a chief of police differently from other police officers. At that level the chief's job function is qualitatively different. He administers the entire

force. If he should be incompetent or dishonest, he could affect the performance of the entire force. In contrast, poor performance by a police officer constitutes far less a hindrance to effective law enforcement. Thus the removal of a chief presents a more pressing case for expediting dismissal. Moreover, when an ordinary police officer is involved, his dismissal is initiated by the chief. The selectmen sit as an impartial body to review that decision; the chief acts as prosecutor, at least in theory. But the selectmen themselves fire the chief and must prosecute the case. There is no point in their presenting the case to themselves after they have already taken the action they are to review. The plaintiff argues that RSA 43:8 provides a means for the replacement of biased selectmen. However when a board of selectmen fires a chief, the entire board would have to be replaced. This would be an incredibly cumbersome procedure and would defeat the purpose of expeditious removal of a chief to safeguard the quality of law enforcement. We believe that had the legislature wished to require such an extended procedure for the dismissal of a police chief, it would not have employed the language that grants him a full judicial hearing after dismissal.

In fact, an appointed chief under RSA 105:2-a (Supp. 1975) retains ample procedural protection. The ordinary officer is granted a pretermination hearing, but if he is then dismissed, he can have the board's decision reviewed in the superior court only for illegality, injustice, or unreasonableness. *Cf.* RSA 31:77. All findings of the selectmen are prima facie lawful and reasonable. *Cf.* RSA 31:78. Thus the police officer carries a very heavy burden if he is to prevail. The scope of review of the superior court over the decision to fire a chief is much broader. RSA 105:2-a (Supp. 1975). The chief is granted a hearing "on the merits and reasonableness of the action."

The allocation of the burden of proof in the superior court also favors the chief over the police officer. An ordinary policeman has both the burden of going forward with the evidence and the ultimate burden of persuasion. *Cf.* RSA 31:78. Superior court review of the chief's dismissal, in contrast, is akin to review over the decisions of the State personnel commission. As such, our decisions in *O'Loughlin v. Personnel Commission*, 117 N.H. 999, 380 A.2d 1094 (1977) and *Desmarais v. Personnel Commission*, 117 N.H. 582, 378 A.2d 1361 (1977), properly allocate the burden of proof. The selectmen have the burden of going forward in superior

court to establish the validity of their action. The chief has the ultimate burden of persuasion. We believe that although a chief is treated differently, such treatment is rational and affords the chief at least as much protection as the officer receives.

In conclusion, the answers to the transferred questions are: RSA 105:2-a (Supp. 1975) does not require a pretermination hearing before the selectmen and RSA 41:48 does not apply to appointed chiefs of police. These answers moot the other questions. On remand, we direct the court's attention to our decisions in *Foote v. State Personnel Comm'n,* 116 N.H. 145, 355 A.2d 412 (1976); *Society for Protection of N.H. Forests v. Site Evaluation Comm.,* 115 N.H. 163, 337 A.2d 778 (1975); *Alcorn v. Rochester Zoning Bd. of Adjustment,* 114 N.H. 491, 322 A.2d 608 (1974), for such relevance as they might have on the requisite specificity of the selectmen's reasons for dismissing the plaintiff.

*Remanded.*

LAMPRON, J., did not sit; JOHNSON, J., sat by special assignment pursuant to RSA 490:3 by agreement of counsel; all concurred.