Strafford
No. 87-483

RONALD W. PERRON

v.

CITY OF SOMERSWORTH & a.

December 29, 1988

*Shea, Mertens, Sager & Sager,* of Wolfeboro (*Edward J. Mertens* on the brief and orally), for the plaintiff.

*Shaheen, Cappiello, Stein & Gordon,* of Dover, and *Elizabeth Cazden,* of Manchester (*Daniel M. Cappiello* and *Ms. Cazden* on the brief, and *Mr. Cappiello* orally), for the defendant.

SOUTER, J. The plaintiff appeals an order of the Superior Court (*Nadeau,* J.) affirming his 1987 dismissal as Chief of Police of the City of Somersworth. We affirm.

The plaintiff, Ronald W. Perron, served as chief of police in the defendant city from 1982 until August 18, 1987, when he was suspended with pay pending investigation into allegations of wrongdoing. On September 18, 1987, the city manager dismissed him for cause, under the authority of RSA 105:2-a, and in a three-page letter concluded that the plaintiff could no longer lead the police department or be trusted to fulfill his duties as its chief.

The manager stated five actual findings in support of his decision: (a) the plaintiff had used money of a fraternal organization, the Somersworth Police Association, of which he was treasurer, to pay for his membership in a health club, without reimbursing the association; (b) he had limited the management authority of the police department's senior officers and had excluded them from participating in the budgeting process; (c) he had retained records of disciplinary action taken against police officers after he should have destroyed them under the terms of a collective bargaining agreement; (d) he had used Somersworth Police Association funds to stock a coke machine under his control, had failed to reimburse the association, had failed to account for the machine's profits, and had lied about their amount; and (e) he had falsely denied that funds were available for controlled drug purchases, under circumstances that had led others to infer that he was guilty of irregularities in the use of those funds.

The plaintiff petitioned the superior court under RSA 105:2-a for review of the dismissal, and subsequently stipulated to the factual truth of three of the justifications invoked by the city manager: the failure to reimburse the association for health club dues, the failure to destroy the disciplinary records, and the misrepresentations to

subordinates about money available for drug purchases. He denied imposing any undue limitation on his subordinates' management authority, however; he contested the allegation of mishandling money in running the coke machine; and he denied that there was cause to fire him.

The superior court ruled otherwise and upheld the city manager's decision. In his appeal before us, the plaintiff argues that the trial court applied an erroneous standard of cause, misunderstood the scope of the hearing, and could not as a matter of law have sustained the dismissal on the record before it.

The first two issues call for only summary treatment, however, the plaintiff having failed to raise them in the trial court. Specifically, he claims that the court was mistaken both in stating it could not substitute its judgment for that of the city manager, and in failing to recognize that "cause" sufficient for dismissal under RSA 105:2-a is "substantial cause" as described in such prior cases as *Ingersoll v. Williams*, 118 N.H. 135, 137, 383 A.2d 1119, 1120 (1978).

Were we to reach the merits of either claim, we would not hold out much hope for the plaintiff's position. Given the burden of persuasion in the superior court, which we will speak to below, we see no apparent error in the trial court's observation that it was not free merely to substitute its own view for the city manager's. And given the court's explicit ruling that state law required a chief's dismissal to be supported by "substantial cause which must specially relate to . . . the administration of the office and must be restricted to something of a substantial nature directly affecting the rights and interest of the public," we see no plausible basis to doubt that the court correctly understood that "cause" under the statute was substantial cause as *Ingersoll* explained it. This seems clear, even though elsewhere in its opinion the court may have been less rigorous in describing the standard and may have cited a case of doubtful pertinence.

What is dispositive for our purposes, however, is that the plaintiff entirely failed to raise these two issues in the trial court, either by requests for rulings of law filed prior to the court's decision, or by motion for reconsideration after the decision was rendered and its alleged errors were revealed. It is axiomatic that matters ignored in the trial court may not be raised here. *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983).

That leaves the third issue, whether as a matter of law the trial court could have sustained the dismissal on the record before it. This does call for consideration on the merits, which we will preface

with attention to the language of the governing statute and our prior case law construing its terms.

RSA 105:2-a provides that an appointed chief of police

"shall be subject to suspension without pay or dismissal only for cause, and after he has been presented with a written specification of the reasons. Upon such suspension or dismissal, he shall be entitled to a hearing, on the merits and reasonableness of the action, in superior court . . . . The court shall have the power to affirm, modify or negate such suspension or dismissal, based upon its findings."

As we noted above, *Ingersoll v. Williams* indicated that "cause" for removal under the statute must be "substantial," 118 N.H. at 137, 383 A.2d at 1120, and although the very breadth of a chief's responsibilities precludes any simple, pat definition of "substantial cause," the term derives its practical significance from three different considerations. At the least, the requirement bars an appointing authority from dismissing a chief "for personal dislike, political disagreement, or reasons of that nature." *Id.* Rather, a ground for dismissal "must be one which specially relates to and affects the administration of the office, and must be restricted to something . . . directly affecting the rights and interests of the public." *State ex rel. Hart v. Common Council*, 53 Minn. 238, 244, 55 N.W. 118, 120 (1893), *quoted in Blake v. Town of Pittsfield*, 124 N.H. 555, 561, 424 A.2d 1050, 1054 (1984). Finally, the ground for removal must be of substantial significance, "such as corruption or inefficiency in office, infraction of the rules governing the police force, the commission of an infamous crime, or the conviction of a misdemeanor and sentence to imprisonment for a term." *Gibbs v. Manchester*, 73 N.H. 265, 267, 61 A. 128, 129 (1905), *quoted in Ingersoll v. Williams, supra* at 137, 383 A.2d at 1120. The requirement of "substantial cause," then, bars personal or political retaliation and requires a demonstration of unfitness or incapacity to discharge the responsibilities entailed in appointment to the office of chief.

*Ingersoll v. Williams* not only thus construed the substantive requirements of RSA 105:2-a, but addressed its procedural implications as well, in holding that the statute places the burden on the appointing authority "of going forward in superior court to establish the validity of [its] action [although the] chief has the ultimate burden of persuasion." *Ingersoll*, 118 N.H. at 139–40, 383 A.2d at 1122. In effect, the plaintiff argues here that the superior court was compelled to find that he had met his burden, because

as a matter of law the city's reasons added up to less than the requisite substantial cause.

We have, however, no need to go beyond the proven irregularities in the plaintiff's financial dealings to demonstrate how patently mistaken the plaintiff's position is. The evidence was uncontradicted that the plaintiff acted as treasurer of the fraternal association of police officers and had been selected for the position because he was the chief of police. One of the association's services to its members was payment of any member's dues to a local health club, for one-half of which the association was then reimbursed by deductions from the member's salary. The plaintiff, as the association's treasurer, paid his own dues under the association's billing arrangement with the club, and although he made one reimbursement payment late in 1985, he had paid nothing more for some twenty-one months up to the time of trial, by which time he admittedly owed the association over three hundred dollars. While the plaintiff tried to mitigate his dereliction by explaining he could not make automatic reimbursement by payroll deductions, since his deductions for other purposes exhausted the capacity of the municipal computer, and while he protested that he meant to reimburse the association from a "Christmas Club," consisting of an envelope of cash in his desk drawer, none of his stories raised even a colorable justification for his clear failure to make the required reimbursements on a timely basis.

Nor was the health club membership the only venture that the plaintiff had funded from the association's purse. In the spring of 1987, the city manager had asked the plaintiff to report on the profit derived during the preceding twelve months from the police department's soft drink machine. Although the plaintiff responded with a figure of $200, the evidence disclosed a much rosier picture. In 1985, the plaintiff had withdrawn $201 from the association's account to stock a machine that he leased directly from a Coca-Cola distributor; the association never authorized or approved the withdrawal, and the plaintiff never repaid it. The plaintiff thereafter sold soft drinks at a one-hundred percent mark-up, and evidence of the rate of consumption indicated that by the time of his suspension the profits must have been between $1,839 and $2,485. A search of the plaintiff's office produced $516 in cash attributable to machine sales, in addition to at least $200 in the machine. Although the plaintiff indicated he had used some profits to pay for snacks consumed within the department, and while he expressed a vague intention to spend net income for the benefit of police officers, he probably revealed his real attitude when he rebuffed an earlier inquiry about the coke money at an association meeting, by saying it was "none of your d—n business." The city

manager accordingly concluded in his dismissal letter that the plaintiff was either lying to him or entirely unconcerned to make an accurate report, and the trial court was entitled to make, in effect, the same findings.

A final example, this time of the plaintiff's administration of departmental funds, will underscore the significance of the financial irregularities already described. The city appropriated funds for the police department's use in making controlled drug purchases through undercover agents. The plaintiff admitted to lying to some of his officers by telling them the funds were exhausted when in fact they were not. He variously explained that he feared the moneys might be misused by a detective, that he wished to conserve the funds for large transactions, and so on. The result, however, was suspicion within his department that he had misspent the money, suspicion which the trial court rightly found to have been warranted.

■ The superior court thus had an evidentiary basis to find the plaintiff chargeable with chronic maladministration of public funds, of the association's funds subject to the plaintiff's fiduciary responsibility, and of funds subject to his control by virtue of his official position. Consequently, the trial court really had little choice but to find that the plaintiff's infidelity in finance and ineptitude in administration had rendered him incapable of holding a position demanding honor and integrity of its incumbent. The court was, moreover, virtually compelled to find that the plaintiff had thereby lost the confidence both of those who served under him and of the manager to whom he was responsible. That the cause for the plaintiff's dismissal was thus substantial is beyond any serious argument, and the plaintiff's claim that he satisfied his burden to demonstrate the inadequacy of the city manager's grounds for dismissing him lacks any plausibility.

*Affirmed.*

All concurred.