Strafford
No. 2004-122

DANIEL YODER

v.

TOWN OF MIDDLETON

Argued: May 10, 2005
Opinion Issued: June 16, 2005

*McKittrick Law Offices*, of North Hampton (*J. Joseph McKittrick* on the brief and orally), for the plaintiff.

*Ransmeier & Spellman, P.C.*, of Concord (*Lawrence S. Smith* and *Lisa M. Lee* on the brief, and *Ms. Lee* orally), for the defendant.

GALWAY, J. The plaintiff, Daniel Yoder, appeals an order of the Superior Court (*Lewis*, J.) affirming his dismissal as the Chief of Police of the Town of Middleton (Town). We affirm.

The record supports the following facts. The plaintiff served as the Chief of Police from 1994 until 2001, when he was placed on administrative leave while away on active military duty. When the plaintiff was reassigned to Pease Air Force Base in 2002, he was allowed to perform part-time shift patrol for the Town. In August 2002, Acting Police Chief Sobel suspected that the plaintiff had, without permission, given ammunition belonging to the Town to Park, owner of a local car repair garage. Sobel notified the Town selectmen of his suspicion and went to Park's garage to retrieve the ammunition. Park acknowledged that he had recently received ammunition from the plaintiff. He agreed to return the four boxes of .45

caliber ammunition to Sobel, who noted that they had the same lot number as that of the ammunition at the police station.

The Town selectmen met with the plaintiff on September 18, 2002, and asked him about the apparent theft of ammunition from the police station. The plaintiff initially denied having taken any ammunition. When the selectmen asserted that the ammunition could be traced, the plaintiff changed his story and said he might have taken some ammunition but it was old ammunition from his house. After the selectmen said, "Look, we can pinpoint this ammunition as coming from here," the plaintiff admitted that it might have come from the Town. The plaintiff was then placed on administrative leave pending the outcome of an investigation by the Attorney General's Office.

When interviewed by the Attorney General's Office, the plaintiff admitted to providing Park with ammunition that belonged to the Town, but alleged that it was old and unfit for police use. He also alleged that he never denied to the selectmen that he gave ammunition belonging to the Town to Park. In a letter to the selectmen on May 6, 2003, the Attorney General's Office stated that the plaintiff's actions "likely constituted the crime of theft by unauthorized taking," and that the plaintiff's inconsistent conduct during the investigation "raise[s] serious questions about the truthfulness of [the plaintiff's] statements ... in connection with this matter."

The Town subsequently dismissed the plaintiff because he had failed to uphold an appropriate standard of behavior for his position by committing theft by unauthorized taking, showing lack of candor, and exercising "egregiously poor judgment." The plaintiff appealed the Town's decision to the trial court pursuant to RSA 105:2-a (2001). The trial court ruled that the Town satisfied its burden of establishing that there was substantial cause to terminate the plaintiff.

The plaintiff makes the following arguments on appeal: (1) the Town did not have "substantial cause" to terminate him; (2) the trial court's admission of the Attorney General's investigation file as evidence was erroneous and prejudicial; and (3) the trial court improperly concluded that, consistent with *State v. Laurie*, 139 N.H. 325 (1995), the plaintiff's credibility problems would impair his ability to function as Chief of Police. We address each issue in turn.

We first address the plaintiff's argument that his actions did not constitute "substantial cause" for termination under RSA 105:2-a. We will uphold the trial court's decision unless it is unsupported by the evidence or erroneous as a matter of law. *Sandford v. Town of Wolfeboro*, 152 N.H. 1, 3 (2005). Our standard is not whether we would have ruled differently, but

whether a reasonable person could have reached the same decision as did the trial court based upon the evidence before it. *Id.*

██ RSA 105:2-a provides that an appointed Chief of Police shall be subject to dismissal only for cause. We have stated that the cause for removal under the statute must be substantial and requires a demonstration of unfitness or incapacity to discharge the responsibilities of the position. *Perron v. City of Somersworth*, 131 N.H. 303, 306 (1988). This precludes reliance upon such factors as "personal dislike, political disagreement, or reasons of that nature." *Ingersoll v. Williams*, 118 N.H. 135, 137 (1978). Rather, a ground for dismissal must specifically relate to and affect the administration of the office, "directly affecting the rights and interests of the public." *Perron*, 131 N.H. at 306. In addition, the ground for removal must be of substantial significance, "such as corruption or inefficiency in office, infraction of the rules governing the police force, the commission of an infamous crime, or the conviction of a misdemeanor and sentence to imprisonment for a term." *Id.* (quotation omitted).

First, the plaintiff argues that his inconsistent statements resulted only in "personal dislike or disagreement" with the Town selectmen and were not a substantial cause for termination. *See Ingersoll*, 118 N.H. at 137. We disagree. In *Perron*, we found sufficient evidence to support the trial court's finding that there was substantial cause to terminate the plaintiff's position as Chief of Police where there was evidence of misadministration of public funds and dishonesty. *Perron*, 131 N.H. at 307-08. Specifically, the evidence indicated that the plaintiff was "either lying" or "entirely unconcerned to make an accurate report" when confronted with questions about unreported profits from the police department's soda machine, and the plaintiff admitted to lying to his officers about the status of police funds for controlled drug purchases. *Id.* at 308. We found sufficient evidence that the plaintiff's overall behavior rendered him incapable of holding a position "demanding honor and integrity." *Id.*

Here, the plaintiff initially denied having taken any ammunition. When the selectmen asserted that the ammunition could be traced, the plaintiff changed his story stating that he might have taken some ammunition but that it was old ammunition from his house. After the selectmen confronted the plaintiff with the fact that the ammunition recovered from Park matched the lot number of the ammunition at the police station, the plaintiff admitted that maybe some of it did come from the Town. When interviewed by the Attorney General's Office, the plaintiff then asserted that he never denied that he gave ammunition from the police department to Park. The plaintiff now contends that he initially denied taking Town

ammunition only as an angry response to the selectmen's accusations that he was stealing from the Town.

■ Based upon this trail of inconsistent statements, the plaintiff created grave doubts as to his capability of holding a position "demanding honor and integrity." *See id.* Moreover, where the Town's police department policy requires officers to "truthfully state the facts . . . before any judicial, departmental or other official investigation," the plaintiff's lack of candor was an explicit violation that caused more than personal disagreement with the selectmen. In this case, the plaintiff's conduct was sufficient evidence for the trial court to find that it affected the "rights and interests of the public." *See id.* at 306; *see also Blake v. Town of Pittsfield*, 124 N.H. 555, 561 (1984).

■ The plaintiff also contends that the ammunition that he gave to Park was only worth $44.80 and was unfit for police use because it was "green and corroded." In addition, he points out that the Attorney General declined to prosecute him due to the *de minimis* value of the items. Thus, he argues, the Town lacked substantial cause for his dismissal given the value of the ammunition. We disagree. First, the plaintiff's argument is misplaced. The selectmen's conclusion that he had violated the public trust was not based on the monetary value of the ammunition alone. Instead, the selectmen found that the act of taking Town property without authorization demonstrated "egregiously poor judgment," which cast doubt upon his capability of holding a position demanding integrity. *See Perron*, 131 N.H. at 308. Second, the Attorney General's investigation concluded that the ammunition given to Park was "not green or corroded" and that the plaintiff likely committed theft by unauthorized taking. Third, the plaintiff's testimony in response to the allegations was less than forthright. In light of the findings of the trial court regarding the plaintiff's improper taking of the ammunition and the circumstances surrounding it, the trial court had sufficient evidence to affirm the Town's conclusion that the plaintiff acted "counter to the role and duties of a Police Chief."

■■ Finally, the plaintiff contends that the Town lacked substantial cause to dismiss him because he was neither charged with a misdemeanor in this matter, nor did his actions involve corruption or inefficiency of office. *See id.* at 306. We disagree. While removal may be justified by corruption, criminal conviction, or inefficiency of office, *see id.*, the definition of "substantial cause" is not limited to those specific acts. To the contrary, we have also included "infraction of the rules governing the police force" as an example of substantial cause. *Id.* Here, the plaintiff's

lack of candor was a violation of the police department's policy of truthfulness in an investigation and fell below the standard of behavior appropriate for his position. Accordingly, the plaintiff's actions understandably eroded the Town's trust and were sufficient evidence for the trial court to find substantial cause for his removal.

Next, the plaintiff argues that the Attorney General's file on its investigation of the plaintiff was inadmissible hearsay. At trial, the court admitted the Attorney General's file for the limited purpose of reviewing one of the bases for his removal. Significantly, the contents of the *file* were summarized in a *report* from the Attorney General's Office, which was admitted as evidence without objection by the plaintiff. We have held that the admissibility of evidence is committed to the sound discretion of the trial judge, and such a ruling will not be disturbed on appeal unless there has been an unsustainable exercise of discretion. *In re Antonio W.*, 147 N.H. 408, 414 (2002); *cf. State v. Lambert*, 147 N.H. 295 (2001) (explaining unsustainable exercise of discretion standard). To demonstrate an unsustainable exercise of discretion reversible on appeal, the plaintiff must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *See In re Brittany L.*, 144 N.H. 139, 144 (1999).

We turn first to the issue of whether the plaintiff was prejudiced as a result of the admission of the file. The plaintiff argues that the Town relied heavily on the file at trial beyond its limited evidentiary purpose. He contends that, therefore, the admission of the file as evidence prejudiced his case. We disagree.

In the report, the Attorney General's Office stated that Sobel's observations "conclusively establish" that the plaintiff gave ammunition from the police department to Park, and that the plaintiff's conduct "likely constituted the crime of theft by unauthorized taking." The report also detailed the plaintiff's inconsistent statements to the Town and to investigators, raising "serious questions" about his truthfulness about the matter. We find that the Attorney General's report, which was admitted without objection, provided a sufficient basis to support any material conclusions that were reached by the trial court.

The plaintiff argues that he was prejudiced by the admission of the Attorney General's file because the trial court relied upon it. He contends that the trial court relied upon the file to find that: (1) according to Sobel, Park stated that the plaintiff owed him ammunition for work done on the plaintiff's car; (2) Park stated that the plaintiff said he was giving him "old ammo that [the plaintiff] had kicking around his house;" and (3) the Attorney General's Office made "a serious attempt" to investigate whether the plaintiff had improper possession of Town property. The plaintiff argues that all three findings were unsupported by the evidence at trial.

Even assuming that the admission of the file was error, the trial court's specific findings were supported by evidence other than the Attorney General's file. First, without objection by the plaintiff, the trial court admitted into evidence a report from Sobel that attests to the first two examples of Park's statements regarding the ammunition. Next, the record shows that the Attorney General's Office reviewed documents and interviewed numerous witnesses in the course of its investigation. Thus, it was not unreasonable for the trial court to find that the Attorney General's Office made "a serious attempt" to investigate the plaintiff. Lacking any other specific examples from the plaintiff, we find that he has failed to show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Thus, he has failed to demonstrate reversible error. *See In re Brittany L.*, 144 N.H. at 144.

Finally, the plaintiff argues that there was insufficient evidence to support the trial court's conclusion that a *Laurie* issue would hinder the plaintiff from effectively carrying out the duties of Police Chief. *See State v. Laurie*, 139 N.H. 325, 333 (1995) (holding that the prosecution's failure to inform defendant of the credibility issues of a police officer significantly involved in the case violated the defendant's constitutional rights). Here, the trial court ruled that the plaintiff's "course of conduct in this entire matter" rendered him unfit for the position of Police Chief. Because we conclude that this evidence compelled the trial court's finding of substantial cause for the plaintiff's dismissal, we need not address the *Laurie* issue.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.