Rockingham
No. 2009-821

LILLIE-PUTZ TRUST, PETER E. SIMMONS, TRUSTEE

v.

DOWNEAST ENERGY CORPORATION & a.

Argued: June 10, 2010
Opinion Issued: September 22, 2010

*Charles G. Douglas, III*, of Concord, and *John Anthony Simmons, Sr.*, of Hampton, on the brief, and *Mr. Douglas* orally, for the petitioner.

*Nicholas R. Aeschliman*, of Portsmouth, by brief and orally, for respondent DownEast Energy Corporation.

*Brown, Olson & Gould, P.C.*, of Concord (*Bryan K. Gould* and *Philip R. Braley* on the brief, and *Mr. Gould* orally), for respondent Alliance Energy, LLC.

DUGGAN, J. The petitioner, Lillie-Putz Trust (Trust), appeals two orders of the Superior Court (*McHugh*, J.) dismissing its writ with prejudice as a sanction for the Trust's refusal to appear for a scheduled mediation and denying its motion for reconsideration. We affirm.

The trial court found or the record supports the following facts. In 1994, the then-owners of a gasoline station in North Hampton leased it to respondent DownEast Energy Corporation (DownEast). In 1999, the Trust acquired the property subject to DownEast's long-term lease. Attorney Simmons, who was counsel for the Trust in the trial court, and his father and brother are the sole beneficiaries of the Trust. In 2001, DownEast assigned its lease to respondent Alliance Energy, LLC (Alliance), which continues to operate the gasoline station.

Shortly after the beginning of its lease, DownEast replaced the existing gasoline tanks. The old tanks were leaking, and had contaminated the surrounding soil and groundwater. DownEast paid for the clean-up and brought suit for reimbursement from the then-owners. After the Trust purchased the property, it intervened to defend against the claims.

In January 2006, the parties participated in mediation, resulting in the Trust's agreement to pay DownEast $70,000. The Trust tendered a check in the amount of $70,000, but wrote on the check "Seventy and no thousand dollars." Concerned that this language would affect the check's negotiability, DownEast returned it to the Trust, and requested a replacement check. In May 2006, counsel for the Trust notified DownEast that it was disavowing the settlement because DownEast had allegedly "concealed" contamination of the property in 2001.

DownEast moved to enforce the settlement, seeking $70,000 plus interest and attorney's fees. The Superior Court (*Fitzgerald*, J.) granted DownEast's motion. The Trust, however, continued to refuse to comply with the settlement agreement. DownEast moved for contempt and costs. The trial court held a hearing on DownEast's motion, at which neither the trustee nor counsel for the Trust appeared. The court found the Trust in contempt, and ordered it to pay the settlement and DownEast's attorney's fees and interest, and ordered the arrest and incarceration of the trustee if the Trust did not pay. The Trust then honored the settlement agreement.

Also in May 2006, the Trust filed the present lawsuit against DownEast, alleging that DownEast had discharged gasoline on the property in 2001. In March 2008, the Trust moved to amend the writ to add Alliance as a defendant, alleging that there was another discharge of gasoline on the property in 2005.

In August 2008, the trial court held a structuring conference. Prior to the conference, counsel for Alliance filed a partial stipulation regarding alternative dispute resolution. While counsel for DownEast and Alliance had conferred and reached an agreement about a proposed mediation schedule, they were unable to reach counsel for the Trust, despite several attempts. In the stipulation, DownEast and Alliance proposed alternative dispute resolution before an experienced mediator during the week of January 26, 2009.

At the structuring conference, the trial court set a deadline of April 30, 2009, for the parties to complete discovery, and scheduled jury selection to begin on June 22, 2009. The parties indicated that they would arrange for private mediation. The Trust thereafter agreed to use the mediator that DownEast and Alliance suggested, and mediation was scheduled for December 17, 2008.

On October 28, 2008, counsel for the Trust emailed counsel for DownEast and Alliance, indicating that he was not prepared to engage in the mediation because discovery was incomplete. He proposed that the mediation be rescheduled sometime after the trial court's deadline for the completion of discovery. DownEast and Alliance proposed continuing the mediation until March 2009, and informed the Trust that if an agreement could not be reached on a date in March, Alliance would ask the court to set a date. The Trust then agreed to mediate in March, and the mediator confirmed mediation would occur on March 11, 2009. The mediator asked the parties to file mediation summaries between five and seven days before the mediation. DownEast and Alliance each prepared and filed mediation statements and provided copies to the Trust. The Trust did not file a mediation statement.

Also on October 28, 2008, counsel for the Trust sent an eviction notice to the sheriff's office seeking to evict Alliance from the property. The grounds for eviction were the same as those contained in the Trust's pending suit against DownEast and Alliance. In November 2008, Alliance commenced an equity action against the Trust challenging the eviction. In January 2009, the Superior Court (*Nadeau*, J.) enjoined the Trust from attempting to evict Alliance and consolidated Alliance's equity action with the Trust's civil action.

At approximately 4:00 p.m. on March 6, 2009, five days before the scheduled mediation, counsel for the Trust contacted counsel for DownEast and Alliance by email, notifying them that he was not prepared to participate in the mediation session:

> [P]lease be advised that we are not prepared to engage in Mediation at this time. This is so because discovery has not been completed. . . . It simply makes *no* sense to attempt to engage in Mediation when you have essentially completed your discovery and ours is far from complete.
>
> We will have to reschedule after we receive your information and all discovery is complete. Please contact [the mediator]'s office and advise him of same and confirm that you have done so.

Counsel for Alliance immediately replied that the Trust's position was "unacceptable" and that they had already continued the mediation once at the Trust's request. He pointed out that "[i]t is rare that all discovery is completed by the time of mediation," that Alliance had "invested a significant amount of time in getting prepared for the mediation and arranging for client representatives to be present," and that Alliance planned to attend as scheduled. Counsel for the Trust responded that the Trust "ha[s] not deposed even one . . . witness []" and added that his father was unable to attend because of medical reasons. He concluded by stating, "we will *not* be in attendance on Wednesday . . . . Please notify [the mediator] as soon as you can and confirm that you have done so."

Counsel for Alliance responded that the Trust had "known about this mediation for months . . . [and] had ample opportunity to take the depositions . . . before now," and that Trust counsel's father's unavailability was irrelevant because his brother, not his father, was the trustee. He then asked Trust's counsel to reconsider and informed him that if the Trust refused to appear and negotiate in good faith, Alliance would be forced "to pursue the remedies provided by the superior court rules." He closed by writing, "Either way, please let me hear from you by 9:00 Monday morning." At about 4:00 p.m. on Monday, March 9, counsel for the Trust replied, "The Trust's position is unchanged with regard to the Mediation."

Counsel for the Trust then called the mediator's office and left a voicemail "alert[ing]" him that the mediation could not go forward as the Trust had not taken the required depositions," and sent the mediator's paralegal an email to the same effect. In it, he stated that he had asked counsel for DownEast and Alliance to notify the mediator, and that he was "concerned that they ha[d] not." He further stated, "As a courtesy to [the mediator], I want to be sure that he understands that we are unable to participate" at the mediation session. No mediation occurred on March 11, 2009.

The Trust claimed that it could not depose John Peters, Steven Hall, and Frederick Hostrop before the mediation. In January 2007, DownEast provided the Trust with interrogatories identifying Peters and Hall as witnesses, and in April 2008 disclosed Hostrop as one of its experts. The Trust did not, however, attempt to depose of any of these witnesses between April 2008 and January 2009.

In October 2008, DownEast's counsel offered to make Hall available for deposition on November 21, 2008, and in November, he offered to make Hostrop available for deposition on December 5 or 9, 2008. The Trust did not respond to these offers, and on November 14, DownEast's counsel asked counsel for the Trust if he wanted to depose Hall on November 21. Trust's counsel replied that November 21 "does not work" and that he would be in touch to suggest other dates.

Trust's counsel then emailed counsel for DownEast on December 22, 2008, seeking to depose Hall and Peters "after mid-January" 2009, when he returned from vacation. DownEast's counsel informed him that he would be away, and sought to schedule the depositions after February 9. Trust's counsel did not respond, and on January 14, 2009, DownEast's counsel reminded him that he would be away from January 16 through February 9, and again offered to schedule the depositions to occur after he returned. He asked Trust's counsel to contact him before he left for vacation, or to speak with his secretary in his absence to make arrangements. Trust's counsel did not respond to this email to schedule depositions of Hall or Peters for nearly two weeks.

On January 19, 2009, Trust's counsel emailed Alliance's counsel requesting dates for Hostrop's deposition. Alliance's counsel responded that he was uncomfortable scheduling the deposition of DownEast's expert, but offered to contact Hostrop so that DownEast's counsel could confirm a deposition date while on vacation. Alliance provided the Trust with four dates in February, and Trust's counsel replied that he needed "time to review and assimilate" interrogatory answers and documents he had received from DownEast and rejected the dates as "overly optimistic and on the early side."

On January 27, 2009, Trust's counsel emailed DownEast's counsel requesting dates "in the late-February, early March timeframe" to depose Hall and Peters. The parties eventually agreed to take these depositions on March 24 and 25, 2009. On February 22, 2009, Trust's counsel requested dates for Hostrop's deposition, and Alliance's counsel provided him with twelve dates in March. Two of the offered dates were before the scheduled March 11 mediation, but the Trust selected March 16 and 17 to depose Hostrop.

On March 12 and 20, 2009, DownEast and Alliance, respectively, moved for sanctions, alleging the Trust failed to attend mediation and requesting that the trial court dismiss the Trust's writ. In its motion, Alliance referred to the Trust's scheduling delays, the settlement dispute in the prior case, and the eviction notice. The Trust objected, addressing only the rescheduling of the mediation session. The trial court granted the motion after finding that "[a]n award of attorney fees on behalf of [DownEast and Alliance] as a result of the failed mediation would be an insufficient remedy given the [Trust]'s overall conduct in this case." The trial court based this conclusion upon the Trust's "unilateral refusal to participate in an agreed upon mediation," the Trust's past misconduct with respect to the property, and the Trust's attempt to evict Alliance before the case was resolved.

The Trust moved for reconsideration, which the trial court denied, finding that the Trust's request was "too little, too late, for both procedural and substantive reasons." The trial court stated that much of the information the Trust provided in its motion "should have been filed in response to motions entered by [DownEast and Alliance]," and none of the new exhibits caused the trial court to conclude it erred in dismissing the cases. This appeal followed.

## I. Motion for Sanctions

On appeal, the Trust argues that its attempt to reschedule the mediation session was an inadequate basis for dismissal. Specifically, the Trust argues that Superior Court Rule 170, which provides for a court-sponsored alternative dispute resolution program, does not apply because the trial court did not order the parties to participate in the mediation. Thus, the Trust argues, the trial court erred by basing its dismissal on the Trust's refusal to participate in the mediation. The Trust also argues that its conduct in this case did not warrant dismissal and the trial court erred in failing to consider less severe sanctions. DownEast and Alliance counter that Rule 170 applies, and the dismissal was proper because the Trust's failure to attend the mediation was a violation of that rule.

We first address the Trust's argument that the trial court erred in applying the sanctions contained in Superior Court Rule 170. As with any

other question of law, we review the trial court's interpretation of the Superior Court Rules *de novo. Martinez v. Nicholson*, 154 N.H. 397, 398 (2006). When interpreting a Superior Court Rule, as with a rule of evidence, a statute or administrative rule, we will first look to the plain meaning of the words. *Cf. State v. Holmes*, 159 N.H. 173, 175 (2009) (rule of evidence); *Vector Mktg. Corp. v. N.H. Dep't of Revenue Admin.*, 156 N.H. 781, 783 (2008) (administrative rule); *Appeal of Pennichuck Water Works*, 160 N.H. 18, 27 (2010) (statute). We look first to the language of the rule itself, and where possible, we ascribe the plain and ordinary meanings to words used. *Cf. Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994) (interpreting statute).

Rule 170 provides that "[a]ll writs of summons . . . shall be assigned to ADR [alternative dispute resolution]." SUPER. CT. R. 170(A)(1). The rule also sets forth certain categories of civil and equity cases that are exempt from the rule. SUPER. CT. R. 170(A)(2). The Trust's writ does not fall within any of those exceptions; thus, Rule 170 applies.

■ The Trust argues that because the trial court did not order mediation pursuant to Rule 170 and the parties agreed to a private mediation, Rule 170 does not apply. Rule 170 provides that the parties "shall confer and select an ADR process . . . and a neutral third party to conduct the process." SUPER. CT. R. 170(B)(1). The parties may select a neutral "from the court lists of approved neutrals," SUPER. CT. R. 170(B)(2), or, if they cannot agree, the "court shall designate a neutral," SUPER. CT. R. 170(B)(3). Alternatively, "[p]arties may select a neutral who is not on the court's lists of approved neutrals if [they] agree on the choice of the neutral." SUPER. CT. R. 170(B)(3)(d). Here, because the parties acted pursuant to Rule 170 by choosing to engage in private mediation and retaining a mediator, Rule 170 applies.

■ The Trust further argues that Rule 170 does not apply because certain technical requirements were not complied with. Specifically, the parties did not file a stipulation to ADR, or a certificate of readiness as required by the rule. *See* SUPER. CT. R. 170(C)(1)(c), (D)(2). The record shows that Alliance, after consulting with DownEast, filed a partial stipulation, selecting mediation as the parties' ADR method, choosing a mediator, setting forth the disputed issues, and proposing a mediation schedule. The Trust did not agree to the proposed mediation schedule even though counsel for DownEast and Alliance "made several attempts to confer with [Trust]'s counsel but [were] unsuccessful." In addition, DownEast and Alliance both filed summaries with the mediator, which the

Trust failed to do. We are not persuaded that the Trust's own failure to comply with the requirements of Rule 170 precluded the trial court from enforcing its sanctions.

■ The Trust also argues that it did not refuse to participate in mediation, "rather it attempted to reschedule it." The record supports the trial court's finding that "counsel for [the Trust] unilaterally indicated that he would not participate in the scheduled mediation and in fact did not do so." The Trust argues that it attempted to reschedule the mediation by contacting the mediator and counsel for DownEast and Alliance. Although Rule 170 allows a mediator to reschedule the ADR session "upon [the] request of a party for good cause shown," SUPER. CT. R. 170(D)(2), that is not what the Trust did. When counsel for the Trust wrote to counsel for DownEast and Alliance on March 6 telling them that mediation would have to be rescheduled after the completion of all the discovery, he instructed them to "contact [the mediator]'s office and advise him of same and confirm that you have done so." After counsel for Alliance replied that this was "unacceptable," counsel for the Trust responded that he would "*not* be in attendance on Wednesday" and again instructed Alliance's counsel to "notify [the mediator] as soon as you can and confirm that you have done so." Counsel for the Trust then emailed the mediator's paralegal and explained that he was "unable to participate" in the scheduled mediation. Trust's counsel never submitted a request to the mediator that the ADR session be rescheduled; rather, he notified opposing counsel that it would not attend and instructed them to notify the mediator. The Trust's statements to DownEast and Alliance that it would not attend the mediation session, and its failure to submit a request to the mediator to reschedule it, amounted to a refusal to attend.

We now address the Trust's argument that its conduct did not warrant dismissal and the trial court failed to consider lesser sanctions. Rule 170(F) provides for sanctions "[i]f a party or a party's counsel fails without good cause to appear at an ADR session scheduled pursuant to this rule." "The consequence is any sanction that is just under the circumstances," including dismissal. *Id.; Lamarche v. McCarthy*, 158 N.H. 197, 205 (2008). The imposition of a sanction is a matter left largely to the discretion of the trial court. *Lamarche*, 158 N.H. at 205. When reviewing a trial court's decision, we will sustain its findings and rulings unless they are lacking in evidentiary support or tainted by error of law. *Hair Excitement v. L'Oreal U.S.A.*, 158 N.H. 363, 370 (2009). We will not overturn its determination absent an unsustainable exercise of discretion. *Id.* To show an unsustainable exercise of discretion, the Trust must demonstrate that the

trial court's ruling was clearly untenable or unreasonable to the prejudice of its case. *Yoder v. Town of Middleton*, 152 N.H. 363, 368 (2005).

Contrary to the Trust's contentions, the trial court considered lesser sanctions. In its order, the trial court specifically found that "[a]n award of attorney fees on behalf of [DownEast and Alliance] as a result of the failed mediation would be an insufficient remedy given the [Trust]'s overall conduct in this case."

■ We also disagree with the Trust that its overall conduct did not warrant dismissal. The trial court listed "several factors that point to the conclusion that only complete dismissal is warranted," including the Trust's having "been found by this Court in the past to have been guilty of misconduct with respect to this same property"; the Trust's attempt "to evict Alliance . . . before the underlying case was resolved"; and the Trust's "failure to engage in timely discovery." The Trust argues that the trial court improperly considered these factors, erred in engaging in a premature analysis of the merits of its case, and improperly applied the doctrine of unclean hands. We disagree.

First, the Trust argues that the trial court erroneously considered its misconduct in the prior settlement. The Trust asserts that it learned of a continuing gasoline contamination on the property after the settlement agreement, and, therefore, the Trust acted in good faith in challenging the settlement. The record, however, supports the trial court's finding that the Trust refused to pay the $70,000 settlement to DownEast "before [it] had any basis for arguing that the remediation was not accomplished properly." Indeed, as noted above, the Trust refused to pay the settlement until the trial court ordered the arrest of its principal. The Trust's conduct in that case was relevant in the trial court's consideration of sanctions in this case.

Next, the Trust argues the trial court improperly relied upon its attempts to evict Alliance. The trial court noted that the eviction petition "forced Alliance to bring the second law suit . . . to retain possession of the property which it was entitled to occupy under a written lease." Thus, the trial court reasoned, the eviction petition was improper because "[t]here was no active gasoline spillage ongoing when [it] was brought." The Trust argues that it had the right as a landlord to evict a tenant who it believed had violated the terms of its lease, and that it was not trying to circumvent the judicial process because its "[w]rit . . . did not seek a declaration that Alliance was in breach of the lease, nor did it seek the remedy of eviction." The Trust's second amended writ, however, contains two counts against Alliance for breach of the lease agreement. In addition, the Trust's eviction petition was so closely related to the underlying writ in this case that the trial court consolidated the two actions. Therefore, the record supports the

trial court's conclusion that there was "a serious question raised with respect to the propriety of attempting to evict Alliance . . . before the underlying case was resolved."

Next, the Trust argues the trial court "got its facts wrong in concluding that the Trust failed to engage in timely discovery" because it completed its depositions before the court's discovery deadline. The Trust asserts that but for "a two-month vacation-induced delay by DownEast's counsel, those depositions would have been scheduled in January or February, 2009." Counsel for the Trust explains that he "intended to take the depositions of [DownEast and Alliance's] witnesses in January, 2009, . . . but [his] plans were thwarted when those depositions could not be scheduled until mid-March, 2009." The record does not support this claim, but reveals that the Trust had ample opportunity to conduct depositions before March 11, 2009, yet failed to do so. As of March 2008, when the Trust added Alliance as a defendant, it had not taken a single deposition. Furthermore, the Trust took no depositions between the time of the structuring conference in August 2008 and March 2009. The Trust asserts that it needed the depositions of key witnesses, including Hall, Hostrop and Peters, in order to participate meaningfully in mediation. The Trust knew of all three of these witnesses as of April 2008, and was aware in October 2008 that the mediation was scheduled for March 2009, yet made no attempts to schedule any depositions until December 22, 2008. Thus, the record supports the trial court's conclusion that the Trust did not timely take the depositions it needed to meaningfully participate in mediation.

The Trust also argues that the trial court rationalized its decision to dismiss the case "by dismissively and incorrectly characterizing its merit and value." The Trust points to the court's language in its order that the New Hampshire Department of Environmental Services "never ordered a costly remediation," and that "[t]his is not a case where the [Trust] has been made to pay hundreds of thousands of dollars on clean-up costs." In fact, at an in-chambers conference in April 2009, the Trust conceded these points when Trust's counsel represented to the court that it did not contend that there were any releases of gasoline since the Trust's purchase of the property, other than in 2001 and 2005. Trust's counsel also confirmed that the department of environmental services was monitoring the site and had never ordered that there be an excavation and removal of contaminated soil or treatment of contaminated water. There is no indication that the trial court prejudged the merits of the Trust's case.

We finally address the Trust's argument that the trial court improperly raised, *sua sponte*, the doctrine of "unclean hands." The Trust argues that the doctrine of "unclean hands" is an equitable doctrine and should not be applied in an action at law. In its order dismissing the Trust's case, the trial

court stated, "this is not a case of [the Trust] having 'clean hands' throughout." We do not read the trial court's reference to unclean hands as applying the doctrine; rather, it is a way of describing the Trust's overall conduct throughout the proceedings.

█ Thus, we conclude that the trial court properly considered all of these factors, and given the aggravating nature of the factors, the trial court was within its discretion to dismiss. Because the Trust unilaterally refused to attend the mediation, we cannot conclude that the trial court unsustainably exercised its discretion in imposing the sanction of dismissal. *Lamarche*, 158 N.H. at 205; *Yoder*, 152 N.H. at 368.

## II. Motion for Reconsideration

The Trust argues that the trial court erroneously denied its motion for reconsideration. In denying the Trust's motion, the trial court reasoned that "much of th[e] information [the Trust submitted in support of its motion] should have been filed in response to motions entered by [DownEast and Alliance]." The Trust argues that DownEast's and Alliance's motions for sanctions focused only upon the mediation issue and not the discovery delays, settlement dispute or eviction notice. While the Trust agrees that Alliance's motion for sanctions referred to those other issues, it contends that "those references were supplied simply as background context." Therefore, it argues that the trial court erred in rejecting the Trust's arguments in response to those issues as being untimely.

Whether to receive further evidence on a motion for reconsideration rests in the sound discretion of the trial court. *Farris v. Daigle*, 139 N.H. 453, 454 (1995). We review the trial court's ruling for an unsustainable exercise of discretion and will not overturn it unless the Trust can show the court's ruling was clearly untenable or unreasonable to the prejudice of its case. *Garand v. Town of Exeter*, 159 N.H. 136, 145-46 (2009).

Here, Alliance filed a thirteen-page motion for sanctions with twenty exhibits totaling over ninety pages to show that the Trust's contention that it tried in good faith to reschedule the mediation was without merit. In its motion, Alliance referred to the contempt order in the prior settlement case and attached a copy of the contempt order as an exhibit, referred to the Trust's eviction action and attached a copy of the eviction action as an exhibit to its motion, and referred to the discovery delays and attached several emails documenting the delays as exhibits. In response, the Trust filed two, three-page objections, addressing only the rescheduling of the mediation session. After the trial court dismissed its case, the Trust filed a nine-page motion for reconsideration with thirty-nine pages of exhibits, setting forth seven reasons why its motion should be granted. The trial

court considered these new materials, but "none . . . caused it to conclude that it was in error in dismissing these cases."

[6] The record supports the trial court's conclusion that the Trust had ample opportunity to respond to the original motions for sanctions and its inclusion of the materials in support of its motion for reconsideration was untimely. Furthermore, the trial court considered the materials before denying the Trust's motion for reconsideration. Thus, we cannot conclude that the trial court unsustainably exercised its discretion in denying the Trust's motion for reconsideration. *See Farris*, 139 N.H. at 454; *Garand*, 159 N.H. at 145-46.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.