**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0314, <u>Arbay M. Osman & a. v. Wen Lin & a.; Sharif Abdullahi & a. v. Wen Lin & a.; Mohamed Mohamed & a. v. Wen Lin & a.; Daud Hussein & a. v. Wen Lin & a.; Sidi Hassan & a. v. Wen Lin & a.; Ramadhani Musa & a. v. Wen Lin & a.; Mohamed Osman Mohamed & a. v. Wen Lin & a.</u>, the court on March 21, 2018, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The plaintiffs, 20 children who are Somali Bantu refugees or whose parents are Somali Bantu refugees, appeal the grant by the Superior Court (<u>Kissinger</u>, J.) of summary judgment to the defendants, the owners and/or managers of apartments in Manchester in which the plaintiffs once lived. <u>See</u> <u>Osman v. Lin</u>, 169 N.H. 329, 331 (2016). The plaintiffs, through their parents, allege that they were injured by their exposure to lead paint while living in the defendants' apartments in 2005-2006. <u>Id</u>. In 2008, their cases were consolidated in the trial court for discovery and trial. The trial court granted summary judgment to the defendants on the ground that the plaintiffs are unable to meet their burden of proof on causation. We affirm.

This case was previously before us in an interlocutory appeal. <u>See</u> <u>Osman</u>, 169 N.H. at 331. In 2015, the Superior Court (<u>Nicolosi</u>, J.) transferred the following question for our consideration:

> Did the trial court commit an unsustainable exercise of discretion in excluding the testimony of Peter Isquith, Ph.D., based on its finding that Dr. Isquith's methodology fails to meet the threshold level of reliability required of an expert witness, per RSA 516:29-a and New Hampshire law?

<u>Id</u>. We answered the transferred question in the negative. <u>Id</u>.

Isquith had been hired by the plaintiffs to assess whether they suffered from neurological deficits that were more likely than not caused by lead paint exposure. <u>Id</u>. at 332. After evaluating the 20 plaintiffs, Isquith, a clinical neuropsychologist, determined that 17 of them suffer from neurological deficits and opined that lead exposure was, more likely than not, a substantial factor in causing those deficits. <u>Id</u>. at 331.

After we decided their interlocutory appeal, the plaintiffs sought to prove that their injuries were caused by lead paint exposure through a different expert, Robert Karp, M.D.  In orders dated November 2016, January 2017, and March 2017, the Trial Court (Kissinger, J.) precluded them from so doing.  The trial court's 2016 and 2017 orders followed the Trial Court's (Nicolosi, J.) June 2014 order, precluding the plaintiffs from relying upon Karp at the evidentiary hearing related to whether Isquith's testimony and report were admissible under RSA 516:29-a (2007).  RSA 516:29-a codifies principles outlined in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Osman, 169 N.H. at 333.  For ease of reference, we refer to the hearing related to the admissibility of Isquith's testimony and report as the "Daubert hearing."

On appeal, the plaintiffs challenge:  (1) our decision in Osman and the trial court order that was the subject of Osman; (2) the trial court's June 2014 order precluding them from relying upon Karp at the Daubert hearing; and (3) the trial court's November 2016, January 2017, and March 2017 orders precluding them from using Karp at trial to establish the requisite causal link between their exposure to lead paint and their injuries.

I.  Osman and the Trial Court Order Appealed in Osman

The plaintiffs argue that, in Osman, we "erroneously affirmed the [trial court's] ruling precluding the expert testimony of . . . Isquith" on an "alternative basis that had been waived by" the defendants.  They contend that "[t]his plain error . . . negatively impacts [their] inherent and fundamental rights to access to the courts and to a remedy for the clear harm caused them by the exposure to lead."  They further contend that, in Osman, we erred by failing to consider their assertion that Isquith's methodology was reliable because his evaluations "were done in a way consistent" with certain federal regulations and that we erred by failing to consider that Isquith, himself, concluded that "the results of his assessments were indeed reliable."  Additionally, the plaintiffs assert that we erred in Osman by failing to consider whether the trial court had erred when it precluded Karp from testifying at the Daubert hearing.

We will not, in this appeal, revisit the trial court order that was the subject of the interlocutory appeal in Osman.  See Saunders v. Town of Kingston, 160 N.H. 560, 566 (2010) (explaining that questions explicitly decided or decided by necessary inference by this court constitute the law of the case and are not ordinarily reexamined in the same case upon a subsequent appeal); see also State v. Robinson, 170 N.H. 52, 60-61 (2017) (discussing the reach of the law of the case doctrine).  Nor will we "reverse" Osman, as the plaintiffs' request.  See State v. Quintero, 162 N.H. 526, 532-33 (2011) (discussing stare decisis factors).

2

II.  June 2014 Order

The trial court excluded Karp from the <u>Daubert</u> hearing because the plaintiffs had failed to disclose him pursuant to the deadlines set in prior court orders.  The trial court found that, to allow the plaintiffs to rely upon Karp at the <u>Daubert</u> hearing "would . . . prejudice the defendants financially and in their ability to effectively prepare to meet the plaintiffs' expert proof."

"We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information." <u>Wong v. Ekberg</u>, 148 N.H. 369, 372 (2002) (quotation omitted). "A party is thus entitled to disclosure of an opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions." <u>Id</u>.  This policy of disclosure applies even when a known factual witness acts as an expert. <u>Id</u>.  "A party's failure to supply this information should result in the exclusion of expert opinion testimony unless good cause is shown to excuse the failure to disclose." <u>Id</u>. (quotation omitted).

The decision to sanction a party is a matter left largely to the discretion of the trial court.  <u>Lillie-Putz Trust v. Downeast Energy Corp.</u>, 160 N.H. 716, 723 (2010).  "In reviewing a discovery sanction, we will not reverse the trial court's ruling unless it constitutes an unsustainable exercise of discretion." <u>Wong</u>, 148 N.H. at 372.  We will sustain the findings and rulings of the trial court unless they lack evidentiary support or are tainted by error of law.  <u>Lillie-Putz Trust</u>, 160 N.H. at 723.  "If the court's findings can reasonably be made on the evidence presented, they will stand." <u>In the Matter of Letendre & Letendre</u>, 149 N.H. 31, 36 (2002).

On appeal, the plaintiffs first argue that excluding Karp from the <u>Daubert</u> hearing constituted an unsustainable exercise of discretion because, they contend, Karp's testimony and report would have been "highly relevant" to "the central question under consideration" at that hearing.  The relevance of Karp's testimony and report does not constitute "good cause" for the plaintiffs' failure to disclose his testimony and report in a timely fashion.  The plaintiffs' relevancy argument fails to persuade us that the trial court's imposition of a discovery sanction constituted an unsustainable exercise of discretion.

The plaintiffs next assert that the court erred when it found that they failed to disclose Karp as an expert and to provide his expert report to the defendants in a timely fashion.  Based upon its review of its prior orders and of "the parties' dealings in the case," the trial court found that the plaintiffs "were duty bound to disclose experts whose opinions they intended to introduce at the <u>Daubert</u> hearing" before the defendants were required to disclose their opposing experts.  The court determined that "[t]he parties' agreements to modify the schedule so that the defense would be fully apprised of the

3

plaintiffs' expert's opinions and the bases for his opinions before [the defense] experts were disclosed demonstrate that the plaintiffs were operating under the same understanding of the trial plan."

The court found that the plaintiffs did not disclose Karp until June 2013, nearly a year after the deadline for their expert witness disclosure had passed. Moreover, the court found that the plaintiffs did not provide Karp's expert report until October 2013, after the defendants had not only disclosed their opposing experts, but also had filed their motion to exclude Isquith's testimony. Because those findings have support in the record, we uphold them. See Letendre, 149 N.H. at 36. Those findings support the trial court's determination that the plaintiffs neither disclosed Karp as an expert nor provided his expert report to the defendants in a timely fashion.

III. November 2016, January 2017, and March 2017 Orders

In its November 2016, January 2017, and March 2017 orders, the trial court precluded the plaintiffs from offering any previously undisclosed opinions from Karp or from any other expert that would seek to establish a causal link between the plaintiff's exposure to lead paint and their alleged injuries. The trial court found that, as reflected in its prior scheduling orders, the parties operated under the assumption that the plaintiffs intended to prove causation through Isquith, their neuropsychological expert. The court determined that the parties recognized that, to prove that the plaintiffs' injuries were proximately caused by their exposure to lead paint presented "a significant Daubert issue"; thus, the parties bifurcated the case so as to address the Daubert issue first and to address damages later. The trial court explained that the plaintiffs, "[h]aving lost the Daubert issue," now sought "to use . . . Karp to attempt to show that the lead exposure caused [their] injuries." The trial court ruled that to allow the plaintiffs to use Karp or any previously undisclosed expert for this purpose "would be contrary to the parties' . . . agreement and the [c]ourt orders regarding deadlines for experts."

Based upon our review of the record submitted on appeal, which includes the prior court orders upon which the trial court relied, we conclude that the trial court did not err when it precluded the plaintiffs from offering any previously undisclosed opinions from Karp or from any other expert that would seek to establish a causal link between the plaintiff's exposure to lead paint and their alleged injuries.

The plaintiffs assert that the trial court's error "effectively blocked [their] access to seek a remedy for the clear harm caused them by the exposure to lead, a right protected by Part I, Article 14, of the N.H. Constitution." In addition, they argue that the trial court's "plain error . . . deprived [them] of due process and justice." We consider this argument to be insufficiently briefed for our review. "[I]n the realm of appellate review, a mere laundry list of

4

complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." <u>Douglas v. Douglas</u>, 143 N.H. 419, 429 (1999) (citation omitted); <u>see</u> <u>Keenan v. Fearon</u>, 130 N.H. 494, 499 (1988) (explaining that "off-hand invocations" of constitutional rights supported by neither argument nor authority warrant no extended consideration).

<u>Affirmed</u>.

Dalianis, C.J., and Bassett and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**
